ISAAC CAHN v. DAVID MAY.

[FILED MAY 6, 1891.]

**Review.** In the case set forth in the opinion, *held*, that there is no error in the record, and the judgment is affirmed.

ERROR to the district court for Lancaster county. Tried below before CHAPMAN, J.

*Harwood, Ames & Kelly*, for plaintiff in error.

*Pound & Burr, contra.*

Maxwell, J.

This action was brought in the district court of Lancaster county, upon a check for $485, drawn by the plaintiff in error in favor of the defendant in error.   On the trial of the cause in the court below, a verdict was rendered in favor of the defendant in error for $548.19, upon which judgment was rendered.

The defenses interposed by the plaintiff in error are:

"First—Want of consideration.

"Second—That said check in said petition mentioned was not made or delivered by this defendant in person, but by his son and agent, Lazard Cahn, while this defendant was absent from the city of Lincoln, and was ignorant of the making of the same, and that same was made by said Lazard in payment of a claim which the plaintiff asserted and pretended to be due and owing him for this defendant, for money advanced by the plaintiff for the defendant, for the purchase of a horse and vehicle to the amount of $450, and for the payment of a bill of $35, incurred by this defendant to one Peters for packing furniture, and this defendant avers that at the time of making and delivering said check, said Lazard being ignorant of the truth of the matter, and relying upon said plaintiff, said claim and assertion, made and delivered the same in ignorance of the real fact, but that in truth and in fact, and as the plaintiff well knew at the time of making said assertion and receiving said check, this defendant did not at that time, nor had he at any time previously owed or been indebted to said plaintiff in said sums, or either of them, nor in any other sum or sums, for or on account of any advance or payment for either of the purposes above mentioned,

nor was he indebted to the plaintiff for or upon any cause or account whatever, as the plaintiff then well knew.

"Third—That hitherto there was and has been an open and running account between the plaintiff and the defendant, extending over many years and embracing many items, and that among said items this defendant was charged on said account with the sum of $450, which it was supposed had been paid to the use of this defendant by one Wolf & Co., of New York City, with whom said plaintiff had a running account, and out of said plaintiff's funds, and that said plaintiff had repaid the same to said Wolf & Co.; that he paid and settled said running account with the plaintiff in ignorance of said item; but this defendant avers that in fact, as this defendant has since learned, said Wolf & Co., long prior to said settlement and payment, had confessed to said plaintiff that said charge for money paid on account of this defendant was a mistake, and had given said plaintiff credit therefor upon settlement between them and said plaintiff, so that said plaintiff was not called upon to, and did not, pay or discharge the same, of which fact, however, the plaintiff did not inform this defendant, but kept the same concealed from him."

In the reply it is alleged that the check was given in settlement of the disputed claim for $450, and the further sum of $35, which May claims to have expended for Cahn.

The testimony tends to show that May and Cahn had been in business together for a number of years; that Cahn removed to New York, and May carried on the business in Lincoln; that the books at Lincoln were kept in duplicate, one set for the use of May and the other for the use of Cahn; that some fifteen years before the trial in this case, Cahn had purchased five acres of land within the present boundaries of the city of Lincoln, and taken the title thereto in the name of the defendant in error; that ten days or two weeks prior to giving the check in question, Lazard Cahn, a son of the plaintiff in error, applied

to May for a conveyance of the five-acre tract above spoken of. This application seems to have been made during business hours on Saturday, and May informed the son that he was busy, but if he would call on Monday he would make a deed therefor. The son seems to have called on Monday, when the defendant in error expressed his willingness to make the deed, but stated that there was an unsettled claim against his father for $450, for money paid for him in the purchase of certain personal property, etc. The son wrote to his father in regard to the claim but says he is not sure whether or not he received an answer before drawing the check.

The defendant in error, however, testifies positively that the son informed him that he had received an answer before the check was drawn. It is pretty evident that the object of the delay was to enable the son to write to his father in regard to the claim of the defendant in error, and that he did not act until he received the answer. However this may be, it is not very material in the case. The testimony tends to show that the son had authority to obtain a deed from the defendant in error and to draw checks in his father's name. On the day on which the deed was made, the son, with a notary public who seems also to some extent to have acted as his attorney, went to the place of business of the defendant in error to obtain a deed, and the son then promised to pay the $450. The defendant in error then claimed that there was a further item of $35 which had been overlooked, that he had paid for the plaintiff in error. The son stated that he knew nothing about the claim, but upon the assurance of the defendant in error that if plaintiff in error disputed it that he would repay the money, the son promised to pay the $35 additional, and thereupon drew a check on one of the Lincoln banks in favor of the defendant in error for the sum of $485, which he delivered to the defendant in error, and thereupon received a deed, duly signed and acknowledged

by the defendant in error and his wife, for the five-acre tract heretofore referred to.

The testimony also shows that the son, before going to the place of business of the defendant in error, and obtaining a deed from him, had agreed with his book-keeper that they would stop payment of the check immediately after its delivery to the defendant in error. This was done. It is not a very flattering picture to draw of the conduct of the son and his book-keeper, and we do not care to comment on such conduct.

The testimony tends to show that the claims of the defendant in error were valid and unpaid, and that the verdict and judgment are right. The verdict should have been for a somewhat larger sum, but that matter cannot be considered in this case. There is no error in the record and the judgment is.

AFFIRMED.

THE other judges concur.